**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**MICHAEL SMITH**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO.  5:06cv126-DCB-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause comes before this Court on Plaintiff's Motion [9-1] for Judgment on the Pleadings as well as Defendant's Motion [11-1] for an Order Affirming the Commissioner's Final Decision. Both Motions are accompanied by Memorandums [10-1], [12-1] in Support.  Plaintiff has also filed a Rebuttal [13-1] to Defendant's Motion [11-1] to Affirm.  Having  considered the Motions [9-1], [11-1], the Memorandums in Support [10-1],[12-1], the Plaintiff's Rebuttal [13-1], the record of proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [9-1] for Judgment on the Pleadings should be granted in part. The Court further finds that Defendant's Motion [11-1] for an Order Affirming the Commissioner's Final Decision should be denied.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for Social Security disability insurance benefits  under Title II of the Social Security Act as well as Supplemental Security Income disability benefits under Title XVI of the Social Security Act on November 24, 2003. (Complaint p. 2).  The Disability Determination Services denied Plaintiff's applications in an initial determination on April 14, 2004. *Id*.   Upon reconsideration, the applications were again denied on May 10, 2004. *Id*.  A request for a hearing before an  Administrative Law Judge ("ALJ") was timely filed by Plaintiff on May 19, 2004, and a

hearing was held before the ALJ in Jackson on March 16, 2006. *Id*.

On March 25, 2006, the ALJ rendered a decision concluding that Plaintiff was not disabled. *Id*. Plaintiff timely filed a request for the Appeals Council to review the ALJ's unfavorable decision. *Id*. On July 21, 2006, the Appeals Council declined review. *Id*. The denial by the Appeals Council exhausted Plaintiff's administrative remedies. Plaintiff filed the instant Complaint [1-1], on September 21, 2006, pursuant to 42 U.S.C. 405(g) of the Social Security Act, to obtain judicial review of a "final decision" of the Commissioner of Social Security.

## FACTS

Plaintiff was born in 1960 (Tr. 55, 222, 237), and was 47 years old when the ALJ issued his final decision. Plaintiff has a tenth grade education (Tr. 70, 237), and his past work included jobs as a heavy equipment operator, a security guard, a stock clerk and an electrician's helper (Tr. 67-68, 86-93, 104, 239, 241-244, 256-260). The Vocational Expert ("VE") testified that Plaintiff's work as heavy equipment and as an electrician's help was medium, semiskilled work; his work as a stock clerk was heavy, semiskilled work; and his work as a security guard was light, semi-skilled work (Tr. 269). Plaintiff was laid off from his last job as a fork lift operator sometime in March 2003 (Tr. 240, 245).

On April 29, 2003, Plaintiff was seen for pain following a fall that twisted his right knee. (Tr. 115). Upon examination, a sprain and internal derangement of the knee were diagnosed (Tr. 116). On September 3, 2003, Plaintiff was seen for nausea, vomiting and a headache and his blood pressure was 187/114 (Tr. 110). Acute sinusitis, severe headache and untreated hypertension were diagnosed and medications were prescribed (Tr.112). Plaintiff was treated at Jackson Hinds Comprehensive Health Center in November and December of 2003 (Tr. 121-134). At his initial visit on November 3, 2003, Plaintiff complained of right knee pain and swelling (Tr. 129). Plaintiff had

been out of medication for three days and his blood pressure was initially 160/100. Plaintiff was diagnosed with degenerative joint disease in his right knee as well as hypertension (Tr. 131).   For these symptoms, Plaintiff received an injection of Decadron; was given samples of Bextra; and, Plaintiff's prescription for anti-hypertensive medication was refilled. *Id.*

On November 10, 2003, Plaintiff returned to Jackson Hinds because of continued pain in his right knee. (Tr. 124). Plaintiff reported that he had a history of a myocardial infarction in 1999, *Id.*, and X-rays of Plaintiff's left knee at that time were negative and x-rays of his right knee showed mild degenerative changes with joint space narrowing in all three compartments and posterior patellar spurring and a possible calcified loose body within the right side of the inferior, lateral aspect of the knee joint (Tr. 136, 190, 192).  For his condition, Plaintiff received Benicar, a hydrochlorothiazide anti-hypertensive medication, and Darvocet (Tr. 128, 189).

On February 19, 2004, Dr. McMillin examined Plaintiff whose main complaint was pain and swelling in his knees (Tr. 138-139).  Plaintiff reported that he could not stand for more than 30 minutes at a time or walk more than one block without severe knee pain (Tr. 138). At the examination, Plaintiff was not using any assistive device for walking and Dr. McMillin observed that he did not believe that one was necessary. *Id.*  Plaintiff's blood pressure was 140/90 and his back had "moderately good" range of motion although there was some restriction of forward flexion at the waist due to Plaintiff's obesity. *Id.*  Plaintiff's right knee was swollen and could flex only to 90 degrees (Tr. 139), and X-rays taken at that time showed moderately severe osteoarthritis of Plaintiff's right knee (Tr. 135).  Dr. McMillin concluded that Plaintiff was obese but in relatively good health and needed to take blood pressure medication (Tr. 139).  He further concluded that Plaintiff could not remain on his right knee for more than 30 minutes at a time and would probably continue to have knee problems that were associated with his obesity. *Id.*

On April 7, 2004, Dr. Caden reviewed Plaintiff's medical records and prepared an assessment of his residual functional capacity ("RFC") (Tr. 144-151). Dr. Caden concluded that as a result of Plaintiff's morbid obesity, coupled with the osteoarthritis of his right knee, Plaintiff could only lift and carry ten pounds occasionally or frequently; could stand/walk for only two hours in an 8-hour workday; could sit for about six hours in an 8-hour workday; and, could push and/or pull occasionally with his right lower extremity (Tr. 144-145). The other limitations Dr. Caden indicated were that Plaintiff should not climb, kneel or crawl; should stoop or crouch only occasionally; and, should avoid hazards such as machinery and heights. (Tr. 146-148).

On April 9, 2004, Plaintiff was admitted to River Regional Hospital complaining of shortness of breath and a rapid heart rate after making deliveries in his truck (Tr. 155). An EKG showed atrial fibrillation with rapid ventricular response but no acute ischemic changes were noted and cardiac enzymes were negative (Tr. 158). Plaintiff's treating physician concluded that he had new onset atrial fibrillation with rapid ventricular response, hypertension, history of myocardial infarction and morbid obesity. *Id*. Plaintiff was started on a Cordarone infusion and the next morning his heart rate was reduced (Tr. 153). Plaintiff converted to a normal sinus rhythm after 36 hours. Intravenous Cordarone was discontinued and Plaintiff was put on oral Cordarone; he remained in sinus rhythm without chest pain; and, was walking around without difficulty *Id*. Plaintiff was discharged with a diagnosis of resolved atrial fibrillation, hypertension, hyperlipidemia and obesity. *Id*. Cordarone, Lipitor, Lasix, Cardizem CD , and K-Dur were prescribed and Plaintiff was strongly advised to lose weight (Tr. 154).

On October 20, 2004, Plaintiff saw Dr. Williams of the River Regional Medical Clinic for complaints of edema on his lowed extremities. (Tr. 198). Plaintiff further complained that he was unable to obtain necessary medications because of his financial circumstances. Plaintiff indicated

that he received some medications at the First Baptist free clinic and he reported that he was out of Lasix for treating his edema but now had the medication. Plaintiff had a full range of motion in his legs with tense 3+ pitted edema but no neurological deficits were noted. *Id.* When Dr Williams saw Plaintiff at the First Baptist Church free clinic the next night, he noted that Plaintiff's edema had already started to dissipate. *Id.*

At his March 16, 2006 hearing, Plaintiff wore a brace on his right wrist. (Tr. 248). He reported that one month earlier on February 16, 2006, he had an "attack" that impacted his ability to hold things and went to the emergency room where he saw Dr. Jackson. (Tr. 248, 266). Plaintiff testified that a nerve conduction study had not been performed but that Dr. Jackson felt that he might have carpal tunnel syndrome ("CTS") and prescribed medication for it. (Tr. 248, 267). At Plaintiff's March 2006 hearing, the ALJ asked the Vocational Expert ("VE"), if a person of Plaintiff's age, educational and work background could perform Plaintiff's past work or other jobs in the national economy if the person was limited to sedentary work that involved occasional lifting and carrying of no more than ten pounds; required only occasional standing or walking; required only limited ability to push or pull with his right leg; did not involve climbing, balancing, kneeling or crawling; required only occasional stooping, bending, crouching or squatting; and, avoided all hazards. (Tr. 270-271).

The VE testified that such a person could not perform any of Plaintiff's prior jobs but that there were other jobs that he could perform and provided three examples of sedentary jobs: 1) a surveillance system monitor; 2) an assembler; and 3) a folder. (Tr. 271). The VE testified that there were about 50,000 surveillance system monitor jobs in the national economy with about 1,000 such jobs in the region; about 20,000 sedentary assembler jobs in the national economy with about 1,000 of these jobs in the region; and, about 10,000 folder positions nationally with roughly 200 of these

jobs in the region. *Id.*  The VE further testified that if the individual additionally had a moderate

difficulty in holding things in his dominant right hand, there would be no jobs he could perform. (Tr.

272-273).[1]

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the

findings of fact upon which it is based are supported by substantial evidence on the record as a

whole, and it was reached through the application of proper legal standards.  42 U.S.C. § 405(g);

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The United States Supreme Court defined

substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion," being "more than a scintilla, but less than a preponderance."  *Richardson v.

Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is

found to support the decision, then the decision is conclusive and must be affirmed, even if there is

evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  On appeal, the

court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that

of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the

evidence preponderates against the decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

Plaintiff argues that in determining his RFC, the ALJ did not properly evaluate his obesity as

well as his CTS. *See* Plaintiff's Memorandum [10-1] in Support p. 7-14.  Defendant maintains that

---

[1]

The Defendant points out that The job as a surveillance system monitor, however, does not require handling, fingering or feeling. See U. S. Department of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles 46 [379.367-010] (1993). There are other sedentary jobs that require little handling.

the ALJ applied the correct legal standard and properly weighed and considered all of the evidence contained in the record. *See* Defendant's Memorandum [12-1] in Support p.8.  The record indicates that the ALJ found Plaintiff's obesity, degenerative arthritis in his right knee, hypertension and atrial fibrillation to be severe impairments (Tr. 15-17).  The record further shows that the ALJ considered these impairments, as well as any functional limitations related to them, in determining Plaintiff's RFC.

However, Plaintiff argues that the ALJ did not properly evaluate his claim in regards to his alleged CTS.  *See* Plaintiff's Memorandum [10-1] in Support p.12-14.  Regarding this issue, the ALJ noted that Plaintiff's testimony concerning CTS was not supported by any medical findings. (Tr. 17). In support, Defendant points out that Plaintiff  testified that a nerve conduction study had not been performed (Tr. 248, 267) and that no clinical findings were submitted demonstrating that Plaintiff suffered from CTS.

At his March 16, 2006 hearing, Plaintiff, wearing a brace on his right wrist, testified that he had been seen in the emergency room by Dr. Jackson, complaining of pain in his dominant right hand/wrist.   Plaintiff informed the ALJ that Dr. Jackson diagnosed CTS, and prescribed Hlydrocodone and Ibuprofen, 800 mg. for pain.  Dr. Jackson also prescribed the wrist brace.  (Tr. at 103, 248-249.)  Dr. Jackson had advised Plaintiff to see Dr. Porter at University Medical Center, but Plaintiff informed the ALJ that he could not afford to see Dr. Porter at the time. (Tr. 266-67). Plaintiff's testimony regarding his visit to Dr. Jackson was not in the record before the ALJ. However, the ALJ recognized Plaintiff's alleged CTS because he adjudicated it as a nonsevere impairment.[2]

---

[2]Counsel for Plaintiff avers that this finding of nonseverity, is an error of law according to Step 2 SSA Regulations on determination of severity, and the standard set forth in *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985).  Plaintiff's maintain that CTS, when clinically

The Plaintiff argues that the ALJ, when made aware of Plaintiff's emergency room treatment for CTS by Dr. Jackson, erred in failing to fully develop Plaintiffs medical record either by having Plaintiff's counsel obtain this evidence, or by ordering the evidence himself.   Generally, the duty to obtain medical records is on the claimant. *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5ᵗʰ Cir. 1981).  However, an ALJ  has a duty to develop facts fully and fairly relating to an applicant's claim for disability benefits. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5ᵗʰ Cir. 1984).  If the ALJ does not satisfy this duty, his decision is not substantially justified. *Id.*  However, reversal of his decision is appropriate only if the applicant shows that he was prejudiced.  *Ripley v. Carter*, 67 F.3d 552, 557 (5ᵗʰ Cir. 1995) *see also Newton v. Apfel*, 209 F.3d 448,458 (5ᵗʰ Cir. 2000).  Specifically, the Fifth Circuit has explained that prejudice can be established by showing that review of the missing information might have led to a different decision. *Ripley*, 67 F.3d at 557.

Plaintiff argues that Defendant's assertion that the record does not contain any    "clinical" evidence is incorrect because Dr. Jackson's direct observation, and examination of plaintiff in the emergency room, is "clinical"  evidence according to the standard medical definition of "clinical." Regardless, Plaintiff agrees that Defendant's statement is correct in that Dr. Jackson's assessment was not in Plaintiff's medical records as of the date of the ALJ's decision on March 25, 2006.  After the March hearing, Plaintiff did see Dr. Robert Williams, who diagnosed Plaintiff with CST. (Tr. 227-229).  Although Dr. Williams report was not available to the ALJ, the ALJ was aware of the existence of evidence of alleged CTS, due to Plaintiff's testimony at the hearing regarding Dr. Jackson's February diagnosis of CTS, and he should have made efforts to obtain this evidence.[3]

---

diagnosed by a physician, is more than a slight abnormality, and, therefore, a severe impairment.

[3] Plaintiff further points out that according to SSA Regulations, the ALJ is required to factor into his RFC assessment the functional limitations of all of the claimant's impairments,

Plaintiff argues that the ALJ's failure to include this evidence would have led to a different result.  Specifically, the Plaintiff argues that proper evaluation of his morbid obesity, and inclusion in his medical record of Dr. Jackson's emergency room diagnosis of CTS would significantly erode the sedentary occupational base, and, according tp SSR 96-9p, result in the conclusion that Plaintiff is disabled.  *See* Plaintiff's Rebuttal [13-1] p.2.  Again the Court notes that g enerally, the duty to obtain medical records is on the claimant. *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981).  However, out of an abundance of caution, the Court finds that ALJ should have fully developed Plaintiff's medical records by examining and considering the medical evidence from Plaintiff's February 2006, emergency room visit in which Dr. Jackson diagnosed and treated Plaintiff for dominant, right hand CTS.  Accordingly this Court finds that this cause should be remanded for further administrative proceedings in order to fully develop the evidence regarding Plaintiff's RFC as it relates to the combined effects of Plaintiff's obesity, degenerative arthritis in his right knee, hypertension, atrial fibrillation and CTS.  The ALJ should also consider the findings of Dr. Robert Williams upon remand.

## CONCLUSION

Based on the foregoing analysis, the Court finds that the Plaintiff's Motion [9-1] for Judgment on the Pleadings should be granted in part.  Specifically, this Court finds that this cause should be remanded for further administrative proceedings in order to properly develop evidence regarding Plaintiff's RFC as it relates to Plaintiff's obesity, degenerative arthritis in his right knee, hypertension, atrial fibrillation and CTS.  The ALJ should also consider the findings of Dr. Robert Williams upon remand. CTS.  The Court further finds that Defendant's Motion [11-1] for an Order Affirming the Commissioner's Final Decision should be denied.

---

even those found nonsevere. See: 20 CFR 404.1523, and 416.923.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the __23rd__ day of January, 2008.

_____s/ JOHN M. ROPER_____
CHIEF UNITED STATES MAGISTRATE JUDGE

.